Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>LENDINGTREE, LLC,<br><br>        Defendants. | Case No.:8:23-cv-00071-JWH(DFMx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant LENDINGTREE, LLC is, and at all times herein mentioned was, a Delaware Limited Liability Company, headquartered in the State of North Carolina, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "LendingTree").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from January 13, 2019 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. LendingTree is engaged in a scheme to sell financial consultation services and/or mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry which LendingTree calls without prior express written consent, through their agents and affiliates.

8. Thus, LendingTree is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, LendingTree, through the use on an agent or affiliate at the direction of and on behalf of LendingTree calls various numbers in the United States to sell LendingTree's financial services without regard to whether those numbers are on the Do Not Call Registry or not.

10. LendingTree and/or its agents and affiliates do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. LendingTree has intentionally violated the TCPA in a so-far successful attempt to sell financial packages for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

13. Defendants made eleven (11) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- January 17, 2019, 1:23 pm, CID 201-649-5930, CNAM [none].
- January 17, 2019, 1:28 pm, CID 949-312-4532, CNAM [none].
- February 6, 2019, 11:07 am, CID 949-312-4532, CNAM [none].
- February 13, 2019, 11:19 am, CID 949-312-4532, CNAM [none].
- February 19, 2019, 11:43 am, CID 949-312-4532, CNAM [none].
- February 19, 2019, 3:44 pm, CID 949-312-4532, CNAM [none].
- February 22, 2019, 1:49 pm, CID 949-312-4532, CNAM [none].
- February 27, 2019, 9:19 am, CID 949-312-4532, CNAM [none].
- March 1, 2019, 8:09 am, CID 949-312-4532, CNAM [none].
- March 4, 2019, 8:17 am, CID 949-312-4532, CNAM [none].
- March 6, 2019, 11:04 am, CID 949-312-4532, CNAM [none].

14. Mr. Sapan made a log of all the calls he received from LendingTree during or shortly after receiving the calls which includes the date and time of the

call and the Caller ID information as well as brief notes about what happened during the calls which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

15. . Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago.

16. Mr. Sapan, himself, registered his residential line on the National "Do-Not-Call" Registry on December 22, 2007 and Mr. Sapan has kept his residential line on the Registry from that time to the present.

17. Mr. Sapan never gave any LendingTree or any other person, agent, affiliate, employee or entity associated with LendingTree express written permission to call him, nor does he have an established business relationship nor personal relationship with LendingTree or any other person, agent, affiliate, employee or entity associated with LendingTree.

18. In just a short ten-week time span from January 17, 2019 to March 6, 2019, LendingTree, though its agent and affiliate transmitted eleven (11) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

19. All but the first call used the same Caller ID Number 949-312-4532.

20. During the first call on January 17, 2019 at 1:23pm an agent and affiliate of LendingTree used Caller ID Number 201-649-5930 and illegally blocked a Caller ID Name from appearing and, since he could not tell who was calling, Mr. Sapan answered the call

21. The caller identified himself as "George" with "National Mortgage Advantage" and asked Mr. Sapan if he was looking to refinance his home.

22. Since there is no company called "National Mortgage Advantage" and Mr. Sapan knew that junk telemarketers constantly use vague and generic faked company names to introduce their pitches in order to evade detection and liability

for illegal calling, Mr. Sapan decided to play along to determine who this really was.

23. LendingTree is also well aware that their agents and affiliates use fake company names while making telemarketing calls.

24. Mr. Sapan said he might be interested and George brought his "manager" on the line to verify some information, and at the end of the call George unilaterally said he would call Mr. Sapan back, but Mr. Sapan never requested nor agreed to any callback.

25. George, without consent, called again approximately five minutes later on January 17, 2019 at 1:28pm, this time using CID 949-312-4532 but still illegally blocking the Caller ID Name, and this time he said LendingTree was their "partner" and that he would connect them into the call, again without asking permission.

26. George connected LendingTree into the call and a lady named "April" of LendingTree answered and "George" introduced himself to "April" of LendingTree and said he was "with the call center".

27. Plaintiff is now aware that April was a direct employee of LendingTree at the time of the call working in LendingTree's call center in Charlotte, North Carolina.

28. When the January 17, 2019 call was transferred to April of LendingTree, she would have seen the phone number of Mr. Sapan on her screen as an alert of the call transfer, which would have included the area code.

29. Mr. Sapan's phone number has an orange county area code.

30. LendingTree has hired agents and affiliate to make calls to California and transfer them to LendingTree.

31. LendingTree has done business with numerous citizens of the State of California, and markets its products to California.

32. Plaintiff pleads on information and belief that April of LendingTree knew that Mr. Sapan's phone number was a California number.

33. Alternatively, even if April of LendingTree did not know that Mr. Sapan's phone number was a California number, she still accepted the call with complete disregard for which state the call originated, as LendingTree markets its products nationally.

34. Due to some technical glitch or another, the call was dropped at that point.

35. LendingTree's agent and affiliate then transmitted the next call to Mr. Sapan over a month later on February 6, 2019 at 11:07 am using the same CID from the second call wherein "April" self-identified as being with LendingTree (CID 949-312-4532).

36. Since Mr. Sapan had already determined this was a junk call from LendingTree's agent and affiliate and confirmed that LendingTree was a real company and not a fake name, he did not answer.

37. LendingTree's agent and affiliate transmitted eight more calls in February and early March, each one using the same CID from the second call wherein "April" self-identified as being with LendingTree (CID 949-312-4532), as detailed above and in Exhibit 1, which Mr. Sapan did not answer since he knew they were junk calls and had positively identified the company responsible for making them or having them made.

38. Plaintiff pleads on information and belief that "National Mortgage Advantage" is a false and faked name, used by an agent and affiliate hired by LendingTree to make illegal telemarketing calls at the direction and control of LendingTree.

39. Plaintiff pleads on information and belief that "George" whom he spoke with on January 1, 2019 is an employee of agent of LendingTree making illegal telemarketing calls at the direction and control of LendingTree.

First Amended Complaint

40. LendingTree relies on agents and affiliates to make telemarketing calls on its behalf, and LendingTree has direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

41. LendingTree has hired agents and affiliates to interact with the public on LendingTree's behalf and therefore gave actual authority to represent LendingTree.

42. LendingTree has agents and affiliates make illegal telemarketing sales calls and merge in LendingTree employees who self-identify as being "with LendingTree" during the calls manifesting the authority LendingTree gave the agent and affiliate to make the illegal call on LendingTree's behalf.

43. Alternatively, Plaintiff pleads on information and belief that LendingTree ratified the making telemarketing calls on its behalf by its agents, including "Samantha", by knowing of the illegal conduct and failing to repudiate the conduct.

44. Defendant may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF LENDINGTREE

45. In the second call received by Mr. Sapan on January 1, 2019 Mr. Sapan spoke with at least one person who was a direct employee of LendingTree, "April", who stated she worked for LendingTree before the call got cut off.

46. Plaintiff has confirmed that April was at the time of the call an employee of LendingTree.

47. "George" of the fictitious "National Mortgage Advantage" stated without prompting or leading that LendingTree was their "partner" before bringing April of LendingTree on the line and telling her he was "with the call center".

48. All of the remaining calls after that used the same Caller ID Number as the call wherein April stated she worked for LendingTree.

49. Plaintiff pleads on information and belief that the officers, managers and employees for LENDINGTREE knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

50. Additionally, April of LendingTree joined the call through LendingTree's lead management software, Invoca.

51. All calls that LendingTree's employees join through the Invoka system have to be transmitted by an affiliate of LendingTree, because the only way to access the Invoca call-joining system is through a designated phone number that LendingTree provides to its affiliates.

52. All of LendingTree's affiliates must have a master marketing agreement with LendingTree in order to be capable of merging calls to LendingTree so the affiliate can be paid for the call under the terms of the master marketing agreement.

53. It is impossible for a random or mistaken call to be placed into LendingTree's Invoca system.

54. "George" of the fictitious "National Mortgage Advantage" was an employee of an affiliate of LendingTree under a master marketing agreement with LendingTree.

55. LendingTree knows that its affiliates will use fictitious names like "National Mortgage Advantage" during telemarketing calls.

56. Whomever "National Mortgage Advantage" really is, they are an agent or affiliate of LendingTree who used LendingTree's exclusive Invoca call merging system.

57. Plaintiff pleads on information and belief that the purpose of using a fictitious company name during the telemarketing calls is expressly done to attempt to avoid detection and liability for illegal telemarketing.

58. Plaintiff pleads on information and belief that another purpose of agents and affiliates using fictitious company names is for the purpose of masking which affiliate transmitted which call to LendingTree to confuse liability if they are sued.

59. LendingTree's master marketing agreement expressly hires and pays affiliates to make calls to transfer calls to LendingTree.

60. While the true identity of "National Mortgage Advantage" is not yet known to Plaintiff without the aid of further discovery, Plaintiff pleads on information and belief that they worked exclusively for LendingTree since the only calls he received from this agent or affiliate were made on behalf of LendingTree.

61. When an affiliate merges a call and joins in an employee of LendingTree into that call the employee of LendingTree condones the actions of the affiliate.

62. When an affiliate merges a call and joins in an employee of LendingTree into that call, the employee of LendingTree never informs the customer that the affiliate is not an agent of LendingTree.

63. When an affiliate transfers a call and brings an employee of LendingTree into that call the employee of LendingTree interacts with the customer and the affiliate at the same time in a coordinated effort with the affiliate to sell the customer LendingTree's products.

## AGENCY LIABILITY ALLEGATIONS

64. Plaintiff pleads on information and belief that to the extent LendingTree uses any agents to make calls, LendingTree has ordered their agent to

make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

65. Plaintiff pleads on information and belief that to the extent LendingTree uses any agents to make calls, LendingTree knew or reasonably should have known (implied agency), that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

66. Plaintiff pleads on information and belief that to the extent LendingTree uses any agents to make calls, LendingTree explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

67. Plaintiff pleads on information and belief that to the extent LendingTree uses any agents to make calls, LendingTree explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of LendingTree.

68. LendingTree condones the use of fake company names during telemarketing calls.

69. LendingTree's employees and affiliates coordinate with one another during calls giving the impression that they are the same actor to any customer on that call.

### "ON BEHALF OF" LIABILITY ALLEGATIONS

70. Plaintiff pleads that all calls complained of above were made "on behalf of" LendingTree within the meaning of those words as used in title 47 of the United States Code section 227(c)(5): "A person who has received more than one telephone call within any 12-month period by or **on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise

First Amended Complaint

permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

71. Plaintiff contends that "on behalf of" liability is a broader standard than traditional agency liability to effectuate the remedial nature of the statute.

72. Plaintiff pleads on information and belief that LendingTree hired, retained, instructed or allowed the agent or affiliate who made the alleged calls to Mr. Sapan to make those calls on behalf of LendingTree in order to sell LendingTree's financial products.

73. Specifically, LendingTree has a master marketing agreement with all of the affiliates that transfer calls to LendingTree to make such calls and pays the affiliates for such transfers.

74. LendingTree is aware that its affiliates are transmitting sales calls expressly for the purpose of joining them to LendingTree direct employees to sell LendingTree services.

75. LendingTree is aware that its affiliates are transmitting more calls than those that are transferred to LendingTree in order to acquire calls to transfer to LendingTree, e.g. unanswered calls. While the true identity of "National Mortgage Advantage" is not yet known to Plaintiff without the aid of further discovery, Plaintiff pleads on information and belief that they worked exclusively for LendingTree since the only calls he received from this agent or affiliate were made on behalf of LendingTree.

76. LendingTree benefits from all calls made by the affiliates, even those that are not transferred to LendingTree, as the mass amount of calling is what allows the affiliate to find customers to transfer to LendingTree.

///

///

- 12 -

First Amended Complaint

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

77. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

78. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

79. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

80. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

81. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

82. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

First Amended Complaint

83. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

84. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

85. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from January 13, 2019 to the present, including up to and through trial.*

86. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or

judicial officer presiding over this matter and the members of their immediate families and judicial staff.

87. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

88. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

89. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

    b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

    c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

    d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

e. Whether the calls transmitted by the Defendant's affiliates were made "on behalf of" the Defendant.

90. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

91. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

92. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

93.     Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

94.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

95.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

96.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

97.     At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

98.     Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant

has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

99. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $500.00 for each violation of 47 U.S.C. § 227(b)(1)(B)
3. For an award of $1,500.00 for each such violation found willful;
4. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

5. For attorney's fees pursuant to all applicable federal and state statutes;
6. For costs of suit herein incurred; and
7. For such further relief as the Court deems proper.

DATED: August 15, 2023                    **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan

First Amended Complaint